UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| Reginald Harris,<br><br>                Plaintiff,<br>    v.<br>James CM Lee, et al.,<br><br>                Defendants. | Case No. 2:22-cv-561-MJP-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for June 2, 2023 |

This matter is before the Court on Defendants Dr. Areig Awad and Physician Assistant (P.A.) Bo Stanbury's ("State Defendants") filing of a motion for summary judgment, and separately, Defendant Dr. James C.M. Lee's motion for summary judgment. Dkts. 14, 19[1]. Plaintiff has brought suit under 42 U.S.C. § 1983 against the State Defendants for violating his Eighth Amendment rights. Against Dr. Lee, Plaintiff brought a medical malpractice claim. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a). For the reasons set forth below, the undersigned recommends the Court GRANT both motions for summary judgment.

---

[1] Plaintiff did not file a response to either motion for summary judgment. Despite his failure to respond, this Court is still required to evaluate the merits of the motion. A party's mere failure to respond, by itself, does not provide the Court with authority to grant the motion. *See Evans v. Independent Order of Foresters,* 141 F.3d 931, 932 (9th Cir.1998). Rather, the Court is independently obligated to "carefully evaluate[ ]" whether there exist genuine issues of material facts which would preclude summary judgment. *See Cristobal v. Siegel,* 26 F.3d 1488, 1495 n. 4 (9th Cir.1994).

REPORT AND RECOMMENDATION - 1

# FACTUAL BACKGROUND

A. <u>Plaintiff's Complaint</u>

Plaintiff is a formerly convicted inmate at Monroe Correctional Complex (MCC). Dkt. 5 (Complaint) at 2. He was released to Interstate Compact status in Louisiana on February 23, 2023[2]. Dkt. 24. He alleges that on April 22, 2019, he underwent surgery on his right foot during which two screws were placed in his foot. *Id.* at 4. Plaintiff states that he continued to feel pain in his right foot after the surgery. During a post-operation appointment at The Everett Clinic, an x-ray was taken of Plaintiff's foot. *Id.* at 6.

Plaintiff alleges that this x-ray showed that one of the screws had broken, and Dr. Lee– the surgeon Plaintiff identifies as the person who operated on Plaintiff's right foot– failed to inform Plaintiff of this during the same appointment. *Id.* After continuing to complain about the pain in his foot, Plaintiff had another x-ray done at MCC; Plaintiff was informed that one of the screws had broken. *Id.* P.A. Stanbury ordered a boot for Plaintiff to wear for three months. Plaintiff states he did not see an outside provider regarding the broken screw until July 2020. *Id.* at 4.

Plaintiff further alleges that he did not trust Dr. Lee because Dr. Lee did not inform him of the broken screw earlier, and when Dr. Lee was consulted about the screw, Dr. Lee recommended a more "complicated surgery" that entailed removing the screw and taking part of another bone in Plaintiff's body. *Id.* Thus, Plaintiff wanted to

---

[2] The State Defendants and Dr. Lee's motions for summary judgment were filed on February 17, 2023, which was prior to Plaintiff's release from MCC. Dkt. 14; Dkt. 19. Defendants properly e-filed their motions and *Rand* notices. Dkt. 18k Dkt. 22. State Defendants state that they received confirmation from the Legal Liaison Officer at DOC that Plaintiff was given copies of their documents on February 17. *See* Dkt. 23-1 (Declaration of Scott M. Barbara) at ¶7. Upon learning that Plaintiff had been released from MCC, Defendants mailed copies of their reply briefs to Plaintiff's new address provided by DOC. *See id.* at ¶6; Dkt. 25-1 (Declaration of Neil Wagner) at ¶8. In addition to mailing a copy of his reply brief to Plaintiff's new address, Dr. Lee states that he resent his motion for summary judgment. *See* Dkt. 25-1 at ¶8.

REPORT AND RECOMMENDATION - 2

seek a second opinion. The Care Review Committee denied his request for a second opinion in January 2021. *Id.* at 5. Plaintiff filed several grievances about the "lack of treatment" and the broken screw, which were allegedly reviewed by Dr. Awad, the Facility Medical Director at MCC. *Id.* The Care Review Committee eventually approved Plaintiff's request to receive a second medical opinion and his second surgery, which occurred in May 2021. *Id.*

      Due to the alleged delay in medical treatment, Plaintiff states that he suffered from physical pain, weight gain, and emotional distress. *Id.* at 6. He brought the instant complaint against the State Defendants and Dr. Lee.

      B.  <u>Plaintiff's Deposition Testimony</u>

      Plaintiff's videoconference deposition was taken on January 3, 2023. *See* Dkt. 17 (Declaration of Jenna Robert) at Exhibit A. During his deposition, Plaintiff testified:

> When I last ---seen Bo, and I told Bo that my problem wasn't basically with Bo or Dr. Awad. My complaint is with the doctor who did the surgery, who is Dr. Lee. That's who my main problem is with. I never told –like I told Bo and Dr. Awad, they did whatever they could do for me through DOC, I get it, because they weren't the ones that did the surgery. Dr. Lee did the surgery. He was the one that was untruthful with me through the surgery.

*See id.* at 40:18-41:1. When asked whether Plaintiff had any complaints about how Dr. Awad handled his care, Plaintiff replied "no." *See id.* at 41:8-10. When asked the same question about P.A. Stanbury, Plaintiff replied "I guess she did what she could do." *See id.* at 41:11-13. He testified that P.A. Stanbury never denied him care. *See id.* at 38:22-23. He further explained that he only put Defendants' names on the complaint at the advice of an attorney that was helping him through the process; he told that attorney, Plaintiff's problem was not with Defendants, it was with Dr. Lee. *See id.* at 41:13-22.

REPORT AND RECOMMENDATION - 3

Finally, when asked whether it was either P.A. Stanbury or Dr. Awad that denied Plaintiff a second opinion, Plaintiff said that it was not. *See id.* at 36:3-13. Plaintiff was aware the Care Review Committee had denied the requests, rather than P.A. Stanbury or Dr. Awad. *Id.*

C. State Defendants' Declarations

P.A Stanbury and Dr. Awad support the motion for summary judgment with their declarations. *See* Dkt. 16 (Declaration of Dr. Areig Awad); Dkt. 17 (Declaration of Bo Stanbury).

P.A. Stanbury states that she was a treating provider for Plaintiff, but did not have the authority to authorize a patient to obtain either a second opinion or surgery. Dkt. 17 at ¶4-7. Rather, the Care Review Committee alone has the authority to authorize both a second opinion and a surgery. *Id.* at ¶9-10. P.A. Stanbury did not participate in the Care Review Committee that reviewed Plaintiff's case. *Id.* at ¶11.

Similarly, Dr. Awad states he did not participate in the Care Review Committee that reviewed Plaintiff's case. Dkt. 16 at ¶12. The only direct care Dr. Awad provided to Plaintiff was when Plaintiff was in the infirmary after his first surgery. *Id.* at ¶3. Dr. Awad has authority to authorize a patient to obtain a second opinion or surgery in non-emergent cases, but only if they are approved by the Care Review Committee. *Id.* at ¶4-5.

An emergency is defined by the Washington DOC Health Plan as "[a] health care situation in which most similarly trained and experienced persons would agree that immediate intervention is necessary for effective treatment of a medical condition. That is, it would be significantly dangerous to the patient to postpone care until authorization

REPORT AND RECOMMENDATION - 4

is obtained from the Facility Medical Director (FMD), CMO or CRC." *Id.* at ¶8. Dr. Awad states that Plaintiff's case did not qualify as an emergency as defined by the DOC Health Plan because Plaintiff's injury would be "typically addressed in an outpatient status and did not include any red flags to warrant an emergent intervention, such as immediate threat to limb or blood supply, extreme pain, signs of infection, etc." *Id.* at ¶9.

D. Dr. Lee's Declaration

Dr. Lee is an internal medicine physician at The Everett Clinic in Mill Creek, Washington. *See* Dkt. 21 (Declaration of James C.M. Lee) at ¶3. Dr. Lee is not an orthopedic surgeon. *Id.* at ¶6. Dr. Lee states that he never provided *any* medical care to Plaintiff, nor has Plaintiff ever been a patient of his. *Id.* at ¶4. Dr. Lee verified this by looking through the Everett Clinic's EMR system and confirmed that Dr. Lee did not have any paperwork, telephone messages, labs, imaging, or medications involving Plaintiff. *Id.* During the time period relevant to this case, Dr. Lee states that he was not involved in any patient care or approval or denial of patient service. *Id.* at ¶5. Instead, he worked in an administrative role as Vice Chair of Complex Care. *Id.*

**DISCUSSION**

A. Summary Judgment Standard

Summary judgment is supported "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.,* at 255. Yet the Court is not allowed to weigh evidence or decide credibility. *Anderson v. Liberty Lobby, Inc.*, at 255. If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

A government official is entitled to qualified immunity under Section 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A right is "clearly established" when existing precedent places the "statutory or constitutional question beyond debate" such that every reasonable officer would understand that the conduct violated that right. *Reichle*, 566 U.S. at 664.

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the

plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) Whether the defendant's conduct violated a constitutional right and (2) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

As discussed below, viewed in light most favorable to the Plaintiff, the facts do not show that the State Defendants' acts violated Plaintiff's Constitutional rights. Accordingly, the State Defendants are entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied.

B. <u>Personal Participation of State Defendants</u>

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *Leer v. Murphy*, 844 F.2d 628, 632 (9th Cir. 1988). To meet the second requirement, the plaintiff must allege facts that show how individually named defendants caused or personally participated in causing the alleged harm. *Id.* at 633.

To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Defendants in a § 1983 action cannot be held liable based on a theory of *respondeat superior* or vicarious liability. *Polk City v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 694

n.58 (1978). A supervisor is liable for constitutional violations of subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to present them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Vague and conclusory allegations of official participation in civil rights violations are not sufficient to state a claim of relief. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

Here, Plaintiff has alleged only that P.A. Stanbury gave Plaintiff a boot to wear and that Dr. Awad reviewed Plaintiff's grievances. Plaintiff has submitted no evidence showing that either P.A Stanbury or Dr. Awad personally participated in denying Plaintiff access to a second opinion or second surgery. And, Plaintiff testified in his deposition that the named Defendants did not deny him the second opinion; it was an act or omission of the Care Review Committee. Neither P.A Stanbury nor Dr. Awad had the authority to authorize a second opinion or surgery for a non-emergent situation, and neither of the State Defendants participated in the Care Review Committee that reviewed Plaintiff's case.

In addition to the fact that Plaintiff did not present to the Court any evidence of grievances he may have filed, to the extent he alleges that Dr. Awad's denial of his grievances constitutes a constitutional violation, Plaintiff's claim would fail. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)) (inmates lack a separate constitutional entitlement to a specific grievance procedure).

Plaintiff's claims against Defendants are conclusory; he has failed to show how Defendants personally participated in any alleged Eighth Amendment violation.

C. Plaintiff's Eighth Amendment Claim Against State Defendants

REPORT AND RECOMMENDATION - 8

Even though the Court recommends dismissal for failure to allege personal participation by the Defendants, the Court also finds that Plaintiff's allegations do not support his Eighth Amendment claim, on the merits.

To state a claim for cruel and unusual punishment in relation to medical care under the Eighth Amendment, a plaintiff must show that a state actor acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference includes denial, delay or intentional interference with a prisoner's medical treatment. *Id*. at 104–5; see also *Broughton v. Cutter Labs*., 622 F.2d 458, 459–60 (9th Cir.1980). To succeed on a deliberate indifference claim, an inmate must demonstrate that the prison official had a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992).

First, the alleged deprivation must be, objectively, "sufficiently serious." *Farmer*, 511 U.S. at 834. A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32–35 (1993); *McGuckin*, 974 F.2d at 1059. Second, the prison official must be deliberately indifferent to the risk of harm to the inmate. *Farmer*, 511 U.S. at 834. An official is deliberately indifferent to a serious medical need if the official "knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. In assessing whether the official acted with deliberate indifference, a court's inquiry must focus on

what the prison official actually perceived, not what the official should have known. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir.1995).

Deliberate indifference requires more culpability than ordinary lack of due care for a prisoner's health or medical malpractice. *Farmer*, 511 U.S. at 835. A plaintiff must show a chosen course of treatment was medically unacceptable under the circumstances and that this course was chosen in conscious disregard of an excessive risk to plaintiff's health. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). This requires more than a difference of opinion between the prisoner-patient and prison medical authorities regarding treatment. *Franklin v. State of Or., State Welfare Div*., 662 F.2d 1337, 1344 (9th Cir. 1981).

Here, Plaintiff's claim is focused on delay in receiving a second opinion and subsequently, another surgery on his foot. He has not shown that either of the Defendants had a conscious disregard of an excessive risk to plaintiff's health. He alleges only that P.A. Stanbury provided him with a boot for his right foot and that Plaintiff filed grievances that were allegedly reviewed by Dr. Awad. Plaintiff does not provide any evidence to show that Defendants knew the full extent of his condition and drew an inference that Plaintiff faced a substantial risk of serious harm, let alone facts suggesting that Defendants acted in a way that was in conscious disregard of an excessive risk to Plaintiff's health. To the contrary, Plaintiff testified that his issues were *not* with how Defendants handled his medical care; it was with Dr. Lee.

Further, Plaintiff testified that P.A. Stanbury never denied him care during the time when Plaintiff was trying to get approval to seek a second opinion. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate

REPORT AND RECOMMENDATION - 10

a prisoner's Eighth Amendment rights." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). Therefore, even if the Court were to assume, for purposes of this analysis, that Plaintiff presented facts to plausibly show that Defendants acted negligently, this would be insufficient to state a cause of action under Section 1983.

Therefore, Plaintiff's Eighth Amendment claim against Defendants should be dismissed with prejudice, and the Court should GRANT State Defendants' motion for summary judgment. Viewed in the light most favorable to Plaintiff on the State Defendants' motion for summary judgment, the facts do not show a genuine dispute of material facts. Accordingly, the State Defendants are entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied.

D. <u>Plaintiff's Medical Negligence Claim Against Dr. Lee</u>

In addition to his federal claim under 42 U.S.C. § 1983 against the State Defendants, Plaintiff asserts a separate medical negligence claim against Dr. Lee.

This Court has supplemental subject-matter jurisdiction over Plaintiff's state-law medical negligence claim if it is part of the "same case or controversy" as plaintiff's federal Section 1983 claims. See 28 U.S.C. § 1367(a). However, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988); *see* 28 U.S.C. § 1367(c). As discussed above, the Court should dismiss Plaintiff's claim of deliberate indifference under the Eighth Amendment. Accordingly, the Court should decline to exercise jurisdiction over the related state-law claims, and Plaintiff's claim against Dr. Lee should be dismissed without prejudice. Dr. Lee asserts that he is not the

doctor who treated Plaintiff, but the Court should decline to address the claim on the merits.

## IN FORMA PAUPERIS STATUS ON APPEAL

The Court must also decide whether Plaintiff's *in forma pauperis* status should continue on appeal. *See* 28 U.S.C. §1915(a)(3) ("an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith"). The Court must determine whether appeal is frivolous or malicious, or whether it fails to state a claim on which relief may be granted. *See* 28 U.S.C. §1915(e)(2)(B)(i)&(ii).

While the Court was not persuaded on the merits of Plaintiff's claim, there is no evidence that his appeal is frivolous or is taken in bad faith. Accordingly, the Court recommends that *in forma pauperis* status should continue on appeal.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court GRANT both motions for summary judgment and DISMISS Plaintiff's claims as to the State Defendants with prejudice and as to Dr. Lee without prejudice. A proposed Order is attached.

REPORT AND RECOMMENDATION - 12

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on June 2, 2023, as noted in the caption."

Dated this 12th day of May, 2023.

*[signature]*

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13